# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WATERVALE MARINE CO., LTD., as
owner of the M/V AGIOS EMILIANOS
John Kennedy Street, Iris House Office
740B, Limassol, Cyprus, and

ILIOS SHIPPING CO., S.A., as technical
manager of the M/V AGIOS EMILIANOS
41, Akti Miaouli,
185 35 Piraeus, Greece, and

ACHILLEA NAVIGATION CORP., as
owner of the M/V STELLAR WIND
80 Broad Street,
Monrovia, Liberia, and

CLEOPATRA SHIPPING AGENCY LTD.,
as technical manager of the M/V STELLAR
WIND
15-17 Hatzikyriako Avenue,
Piraeus 185 37, Greece, and

MERCATOR LINES (SINGAPORE) PTE,
LTD., as owner of the M/V GAURAV
PREM,
42-01B, Suntec City Tower 2, 9, Temasek
Boulevard, Singapore 038989, and

TARGET SHIP MANAGEMENT PTE,
LTD., as technical manager of the M/V
GAURAV PREM,
04-04, Suntec Tower 1, 7, Temasek
Boulevard, Singapore 038787, and

BULKERS HOLDING, INC., as owner of
the M/V POLYNEOS
Ajeltake Island, Ajeltake Road,
Majuro, Marshall Islands, and

ODYSEA CARRIERS S.A., as technical
manager of the M/V POLYNEOS
173, Konstantinou Karamanli Avenue,
Voula, 166 73 Athens, Greece,

Civil Action No. _____

1

|  |  |
|---|---|
| Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY<br>3801 Nebraska Ave., NW,<br>Nebraska Avenue Complex<br>Washington, D.C. 20016, and<br><br>UNITED STATES COAST GUARD,<br>Coast Guard Headquarters<br>Office of Claims and Litigation<br>Room 1413<br>2100 Second Street, SW<br>Washington, DC 20593<br><br>Defendants. | **COMPLAINT** |

## COMPLAINT

COMES NOW WATERVALE MARINE CO., LTD., as owner of the M/V AGIOS EMILIANOS; ILIOS SHIPPING CO., S.A., as technical manager of the M/V AGIOS EMILIANOS; ACHILLEA NAVIGATION CORP., as owner of the M/V STELLAR WIND; CLEOPATRA SHIPPING AGENCY LTD., as technical manager of the M/V STELLAR WIND; MERCATOR LINES (SINGAPORE) PTE, LTD., as owner of the M/V GAURAV PREM; TARGET SHIP MANAGEMENT PTE, LTD., as technical manager of the M/V GAURAV PREM; BULKERS HOLDING, INC., as owner of the M/V POLYNEOS; and ODYSEA CARRIERS S.A., as technical manager of the M/V POLYNEOS, by and through its undersigned counsel, and alleges and states as follows:

## THE PARTIES

1.      Plaintiff Watervale Marine Co., Ltd. ("Waterville") is a foreign corporation with a registered office in Cyprus.  Watervale is the owner of the M/V AGIOS EMILIANOS.

2.      Plaintiff Ilios Shipping Co., S.A. ("Ilios") is a foreign corporation with offices in Greece.  Ilios is the technical manager of the M/V AGIOS EMILIANOS.

3.      Plaintiff Achillea Navigation Corp ("Achillea") is a foreign corporation with a registered office in Liberia.  Achillea is the owner of the M/V STELLAR WIND.

4.      Plaintiff Cleopatra Shipping Agency Ltd ("Cleopatra") is a foreign corporation with offices in Greece.   Cleopatra is the technical manager of the M/V STELLAR WIND.

5.      Plaintiff Mercator Lines (Singapore) Pte, Ltd ("Mercator") is a foreign corporation with offices in Singapore.  Mercator is the owner of the M/V GAURAV PREM.

6.      Plaintiff Target Ship Management Pte, Ltd ("Target") is a foreign corporation with offices in Singapore.  Target is the technical manager of the M/V GAURAV PREM.

7.      Plaintiff Bulkers Holding, Inc ("Bulkers") is a foreign corporation with a registered office in the Marshall Islands.  Bulkers is the owner of the M/V POLYNEOS.

8.      Plaintiff Odysea Carriers S.A ("Odysea") is a foreign corporation with offices in Greece.  Odysea is the technical manager of the M/V POLYNEOS.

9.     Defendant, the United States Department of Homeland Security, is a Department of the United States Government, with an office at 3801 Nebraska Ave., NW, Nebraska Avenue Complex, Washington, D.C. 20016.

10.     Defendant, the United States Coast Guard, is an agency of the United States Government under the Department of Homeland Security, with an office at 2100 Second Street, SW, Washington, DC 20593.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper pursuant to the following statutes: (1) 28 U.S.C. § 1331 (federal question), (2) 5 U.S.C. § 701, et seq., (Administrative Procedures Act, hereinafter the "APA"), and (3) 28 U.S.C. § 1333 (admiralty and maritime jurisdiction).

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e), as this action is commenced against a Department and Agencies of the United States government, the Department of Homeland Security and the United States Coast Guard.

## FACTUAL HISTORY

**A.     The M/V AGIOS EMILIANOS**

13.     The M/V AGIOS EMILIANOS is an oceangoing bulk carrier owned by Plaintiff Watervale and operated by Plaintiff Ilios.

14.     In April 2011, inspectors from the United States Coast Guard Sector New Orleans boarded the M/V AGIOS EMILIANOS at New Orleans to perform a Port State Control ("PSC") examination of the vessel, pursuant to the Coast Guard's authority provided in 14 U.S.C. § 89(a).[1]

---

1 "The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty

4

15.     The Coast Guard inspectors alleged that the Chief Engineer of the M/V AGIOS EMILIANOS had presented them a materially false Oil Record Book, in violation of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et seq.* (hereinafter, the "APPS") and violated the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (hereinafter, the "CWA").

16.     On April 27, 2011, the Coast Guard Captain of the Port, Sector New Orleans, pursuant to a provision of the APPS, 33 U.S.C. § 1908(e),[2] requested the U.S. Customs and Border Protection (hereinafter "Customs") to withhold the vessel's departure clearance, required by 46 U.S.C. § 60105,[3] for the vessel to be permitted to depart the Port of New Orleans.

17.     Customs withheld the vessel's departure clearance pursuant to the request of the Coast Guard.

---

officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized." 14 U.S.C. § 89(a).

2 "If any ship subject to the MARPOL Protocol, Annex IV to the Antarctic Protocol, or this Act, its owner, operator, or person in charge is liable for a fine or civil penalty under this section, or if reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this section, the Secretary of the Treasury, upon the request of the Secretary, shall refuse or revoke the clearance required by 46 U.S.C. § 60105. Clearance may be granted **upon the filing of a bond or other surety satisfactory to the Secretary**." 33 U.S.C. § 1908(e). (Emphasis added).

3 "(b) Other Vessels.— Except as otherwise provided by law, a vessel that is not a vessel of the United States shall obtain clearance from the Secretary before proceeding from a port or place in the United States—(1) for a foreign port or place; (2) for another port or place in the United States; or (3) outside the territorial sea to visit a hovering vessel or to receive or deliver merchandise while outside the territorial sea." 46 U.S.C. § 60105.

18.     Pursuant to the APPS, the release of the vessel is conditioned, "upon the filing of a bond **or** other surety satisfactory to the Secretary" of the Department of Homeland Security. *See* 33 U.S.C. § 1908(e) (emphasis added).

19.     Notwithstanding the statutory limitation in the APPS that allowed the Coast Guard to demand nothing more than a "bond **or** other surety satisfactory to the Secretary," the Coast Guard conditioned the release of the vessel on Plaintiffs Watervale and Ilios posting a monetary surety bond **and** entering into a "Security Agreement."

20.     As discussed in Section E of the Complaint, *infra*, the Security Agreement contains at least eleven (11) material terms and conditions the Coast Guard is not authorized to demand pursuant to 33 U.S.C. § 1908(e), or any other statute.  These unauthorized terms and conditions are set by Coast Guard Headquarters, including the Commandant's Office, on an institutional basis and as a matter of Coast Guard policy, which cannot be varied or changed by the local Coast Guard Sector or District commanders, and are required in every Security Agreement that is executed by the Coast Guard in APPS related matters.

21.     If Plaintiffs Watervale and Ilios had failed to enter into the Security Agreement, which is a contract of adhesion, the M/V AGIOS EMILIANOS  and its crew, both potential witnesses and others who were not witnesses in the investigation, would have remained detained indefinitely, with Ilios and Watervale losing daily charter hire, delaying cargo vital to commerce, and incurring costs for wharfage, bunkers for auxiliary power, crew wages and maintenance, provisions, insurance, local agents expenses and port charges, and exposing themselves to significant and substantial breach of contract claims from the charterers of the vessel.

22.     Through the use of economic duress, the Defendants coerced Plaintiffs Watervale and Ilios to jointly post a monetary bond of $1,125,000 *and* enter into the Security Agreement, which they executed on May 7, 2011.  Thereafter, the M/V AGIOS EMILIANOS was permitted to depart the Port of New Orleans. A true and accurate copy of the AGIOS EMILIANOS Security Agreement is attached hereto and made part of the Complaint as Exhibit "A."

23.     The terms of the AGIOS EMILIANOS Security Agreement are virtually identical to the other three (3) Security Agreements that are also the subject of this Complaint, and are set forth below in Section E.

**B.      The M/V STELLAR WIND**

24.     The M/V STELLAR WIND is an oceangoing bulk carrier owned by Plaintiff Achillea and operated by Plaintiff Cleopatra.

25.     In September 2011, inspectors from the United States Coast Guard Sector New Orleans boarded the M/V STELLAR WIND at New Orleans to perform a PSC examination of the vessel, pursuant to the Coast Guard's authority provided in 14 U.S.C. § 89(a).[4]

26.     The Coast Guard inspectors alleged that the Chief Engineer of the M/V STELLAR WIND had presented them a materially inaccurate Oil Record Book, in violation of the APPS, 33 U.S.C. § 1901, *et seq.*

27.     On September 19,  2011, the Coast Guard Captain of the Port, Sector New Orleans, pursuant to a provision of the APPS, 33 U.S.C. § 1908(e),[5] requested Customs to

---

4 *See supra* FN 1.
5 *See supra* FN 2.

withhold the vessel's departure clearance, required by 46 U.S.C. § 60105,[6] for the vessel to be permitted to depart the Port of New Orleans.

28.     Customs withheld the vessel's departure clearance pursuant to the request of the Coast Guard.

29.     Notwithstanding the statutory limitation in the APPS that allowed the Coast Guard to demand nothing more than a "bond **or** other surety satisfactory to the Secretary," the Coast Guard conditioned the release of the vessel on Plaintiffs Achillea and Cleopatra posting a monetary surety bond ***and*** entering into a "Security Agreement."

30.     As discussed in Section E of the Complaint, *infra*, the Security Agreement contains at least eleven (11) material terms and conditions the Coast Guard is not authorized to demand pursuant to 33 U.S.C. § 1908(e), or any other statute.   These unauthorized terms and conditions are set by Coast Guard Headquarters, including the Commandant's Office, on an institutional basis and as a matter of Coast Guard policy, which cannot be varied or changed by the local Coast Guard Sector or District commander, and are required in every Security Agreement that is executed by the Coast Guard in APPS related matters.

31.     If Plaintiffs Achillea and Cleopatra had failed to enter into the Security Agreement, which is a contract of adhesion, the M/V STELLAR WIND and its crew, both potential witnesses and others who were not witnesses in the investigation, would have remained detained indefinitely, with Achillea and Cleopatra losing daily charter hire, delaying cargo vital to commerce, and incurring costs for wharfage, bunkers for auxiliary power, crew wages and maintenance, provisions, insurance, local agents

---

6 *See supra* FN 3.

expenses and port charges, and exposing themselves to significant and substantial breach of contract claims from the charterers of the vessel.

32.    Through the use of economic duress, the Defendants coerced Plaintiffs Achillea and Cleopatra to jointly post of a monetary bond of $500,000 *and* enter into the Security Agreement, which they executed on September 20, 2011. Thereafter, the M/V STELLAR WIND was permitted to depart the Port of New Orleans. A true and accurate copy of the STELLAR WIND Security Agreement is attached hereto and made part of the Complaint as Exhibit "G."

33.    The terms of the STELLAR WIND Security Agreement are virtually identical to the other three (3) Security Agreements that are also the subject of this Complaint, and are set forth below in Section E.

**C.    The M/V GAURAV PREM**

34.    The M/V GAURAV PREM is an oceangoing bulk carrier owned by Plaintiff Mercator and operated by Plaintiff Target.

35.    In September 2011, inspectors from the United States Coast Guard Sector Mobile boarded the M/V GAURAV PREM at Mobile, Alabama to perform a PSC examination of the vessel, pursuant to the Coast Guard's authority provided in 14 U.S.C. § 89(a).[7]

36.    The Coast Guard inspectors alleged that the Chief Engineer of the M/V GAURAV PREM had presented them a materially inaccurate Oil Record Book, in violation of the APPS, 33 U.S.C. § 1901, *et seq.*

---

7 *See supra* FN 1.

37. On September 26, 2011, the Coast Guard Captain of the Port, Sector Mobile, pursuant to a provision of the APPS, 33 U.S.C. § 1908(e),[8] requested Customs to withhold the vessel's departure clearance, required by 46 U.S.C. § 60105,[9] for the vessel to be permitted to depart the Port of Mobile.

38. Customs withheld the vessel's departure clearance pursuant to the request of the Coast Guard.

39. Notwithstanding the statutory limitation in the APPS that allowed the Coast Guard to demand nothing more than a "bond **or** other surety satisfactory to the Secretary," the Coast Guard conditioned the release of the vessel on Plaintiffs Mercator and Target posting a monetary surety bond ***and*** entering into a "Security Agreement."

40. As discussed in Section E of the Complaint, *infra*, the Security Agreement contains at least eleven (11) material terms and conditions the Coast Guard is not authorized to demand pursuant to 33 U.S.C. § 1908(e), or any other statute. These unauthorized terms and conditions are set by Coast Guard Headquarters, including the Commandant's Office, on an institutional basis and as a matter of Coast Guard policy, which cannot be varied or changed by the local Coast Guard Sector or District commanders, and are required in every Security Agreement that is executed by the Coast Guard in APPS related matters.

41. If Plaintiffs Mercator and Target had failed to enter into the Security Agreement, which is a contract of adhesion, the M/V GAURAV PREM and its crew, both potential witnesses and others who were not witnesses in the investigation, would have remained detained indefinitely, with Mercator and Target losing daily charter hire,

---

8 *See supra* FN 2.
9 *See supra* FN 3.

delaying cargo vital to commerce, and incurring costs for wharfage, bunkers for auxiliary power, crew wages and maintenance, provisions, insurance, local agents expenses and port charges, and exposing themselves to significant and substantial breach of contract claims from the charterers of the vessel. Through the use of economic duress, the Defendants coerced Plaintiffs Mercator and Target to each post a monetary bond of $500,000 for a total of $1 million *and* enter into the Security Agreement, which they executed on October 4, 2011. Thereafter, the M/V GAURAV PREM was permitted to depart the Port of Mobile. A true and accurate copy of the GAURAV PREM Security Agreement is attached hereto and made part of the Complaint as Exhibit "K."

42.    The terms of the GAURAV PREM Security Agreement are virtually identical to the other three (3) Security Agreements that are also the subject of this Complaint, and are set forth below in Section E.

**D.    The M/V POLYNEOS**

43.    The M/V POLYNEOS is an oceangoing bulk carrier owned by Plaintiff Bulkers and operated by Plaintiff Odysea.

44.    In October 2011, inspectors from the United States Coast Guard Sector New Orleans boarded the M/V POLYNEOS at New Orleans to perform a PSC examination of the vessel, pursuant to the Coast Guard's authority provided in 14 U.S.C. § 89(a).[10]

45.    The Coast Guard inspectors alleged, *inter alia*, that the Chief Engineer of the M/V POLYNEOS had presented them a materially inaccurate Oil Record Book, in

---

10 *See supra* FN 1.

violation of the APPS, 33 U.S.C. § 1901, *et seq.* and that the vessel had also violated the Port and Waterways Safety Act, 33 U.S.C. § 1221, *et seq.*

46.     On October 26, 2011, the Coast Guard Captain of the Port, Sector New Orleans, pursuant to a provision of the APPS, 33 U.S.C. § 1908(e),[11] requested Customs to withhold the vessel's departure clearance, required by 46 U.S.C. § 60105,[12] for the vessel to be permitted to depart the Port of New Orleans.

47.     Customs withheld the vessel's departure clearance pursuant to the request of the Coast Guard.

48.     Notwithstanding the statutory limitation in the APPS that allowed the Coast Guard to demand nothing more than a "bond or other surety satisfactory to the Secretary," the Coast Guard conditioned the release of the vessel on Plaintiffs Bulkers and Odysea posting a monetary surety bond *and* entering into a "Security Agreement."

49.     As discussed in Section E of the Complaint, *infra*, the Security Agreement contains at least eleven (11) material terms and conditions the Coast Guard is not authorized to demand pursuant to 33 U.S.C. § 1908(e), or any other statute.  These unauthorized terms and conditions are set by Coast Guard Headquarters, including the Commandant's Office, on an institutional basis and as a matter of Coast Guard policy, which cannot be varied or changed by the local Coast Guard Sector or District commanders, and are required in every Security Agreement that is executed by the Coast Guard in APPS related matters.

50.     If Plaintiffs Bulkers and Odysea had failed to enter into the Security Agreement, which is a contract of adhesion, the M/V POLYNEOS and its crew, both

---

11 *See supra* FN 2.
12 *See supra* FN 3.

potential witnesses and others who were not witnesses in the investigation, would have remained detained indefinitely, with Bulkers and Odysea losing daily charter hire, delaying cargo vital to commerce, and incurring costs for wharfage, bunkers for auxiliary power, crew wages and maintenance, provisions, insurance, local agents expenses and port charges.

51.     Through the use of economic duress the Defendants coerced Plaintiffs Bulkers and Odysea to jointly post a monetary bond of $1,125,000 *and* enter into the Security Agreement, which they executed on November 17, 2011. Thereafter, the M/V POLYNEOS was permitted to depart the Port of New Orleans. A true and accurate copy of the POLYNEOS Security Agreement is attached hereto and made part of the Complaint as Exhibit "P."

52.     The terms of the POLYNEOS Security Agreement are virtually identical to the other three (3) Security Agreements that are also the subject of this Complaint, and are set forth below in Section E.

**E.     The Terms of the Security Agreements**

53.     During the pendency of the investigation into each of the above-referenced vessels, the Coast Guard conditioned the granting of each vessel's departure clearance on the posting of the monetary bond *and* the execution of the aforementioned Security Agreements by each vessel's respective owner and operator, the Plaintiffs named herein.

54.     The Security Agreements contained terms and conditions the Coast Guard was not authorized to demand pursuant to 33 U.S.C. § 1908(e).[13]   Each of these unauthorized terms and conditions are set by Coast Guard Headquarters, including the

---

13 *See supra* FN 2.

Commandant's Office, and are required on a non-negotiable basis to be incorporated into Security Agreements. The local Coast Guard Sector and District commanders have no authority to alter or strike these unauthorized terms and conditions from Security Agreements.

55.     Each Security Agreement contained at least eleven (11) non-negotiable terms, requiring the Plaintiffs to, *inter alia*:

        **a.**     Provide for the **indefinite detention** of crewmembers identified by the Coast Guard for an unlimited time;[14]

        **b.**     Pay the total wages, lodging costs, transportation costs, medical care costs, and a per diem for each of the detained crewmembers during the indefinite detention period;

        **c.**     Encourage the crew, who were represented by independent counsel and who were the subjects and/or targets of criminal investigation, to cooperate with the government;

        **d.**     Maintain the employment, indefinitely, of all detained crewmembers;

        **e.**     Stipulate to the authenticity of documents and items seized from the vessel by the United States;

        **f.**     Pay all repatriation costs for the all detained crewmembers;

        **g.**     Confiscate each detained crewmember's passport, to provide notice to the government if a crewmember requests that a

---

14 At each respective Plaintiff's expense, the Coast Guard demanded the indefinite detention of ten (10) crewmembers from the M/V AGIOS EMILIANOS, twelve (12) crewmembers from the M/V STELLAR WIND, sixteen (16) crewmembers from M/V GAURAV PREM, and fourteen (14) crewmembers from the M/V POLYNEOS. *See* Security Agreements at Exhibits A, G, K, and P.

passport be returned, and to delay returning the passport to the crewmember for seventy-two (72) hours;

**h.**    Facilitate and assist the United States in effecting service of Grand Jury and/or trial subpoenas on employees of the Owner and/or Operator who are not United States citizens and who reside outside of the United States;

**i.**    Waive any objection to *in personam* jurisdiction;

**j.**    Waive any objection to *in rem* jurisdiction; and,

**k.**    Enter an appearance in any criminal or civil penalty actions brought against the Owner or Operator relating to this matter.

**F.    The Coast Guard May Not Demand Anything More Than a Bond or Other Financial Surety Under 33 U.S.C. §1908 (e)**

56.    There is no statutory or legal authority for the Coast Guard to demand the Plaintiffs to waive constitutionally protected rights, pay for the cost of detaining, housing, transporting, etc., witnesses, material or otherwise, **for an indefinite period of time**, or to agree to other fundamentally unfair and objectionable terms as a condition of releasing a vessel under the APPS provision in 33 U.S.C. § 1908(e).

57.    The APPS is the U.S. codification and implementation of International Convention for the Prevention of Pollution From Ships, 1973 as modified by the Protocol of 1978 ("MARPOL"). See 33 U.S.C. § 1901 *et. seq.*

58.    MARPOL is an international convention that "attempts to strike a balance between the need to protect and preserve the marine environment and the desire not to impose laws which make shipping prohibitively expensive." *See United States v. Apex Oil Company Inc., et al.*, 132 F.3d 1287, 1291 (9th Cir. 1997).

59.    The operative section of the APPS provides that, "[i]f any ship subject to the MARPOL Protocol, Annex IV to the Antarctic Protocol, or this Act, its owner, operator, or person in charge is liable for a fine or civil penalty under this section, or if reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this section, the Secretary of the Treasury, upon the request of the Secretary [of the Department of Homeland Security], shall refuse or revoke the clearance required by 46 U.S.C. § 60105 [for the vessel to depart]. **Clearance may be granted upon the filing of a bond or other surety satisfactory to the Secretary.**" 33 U.S.C. § 1908(e). (Emphasis added).

60.    The legislative history of the APPS is clear that 33 U.S.C. § 1908(e) expressly limits the Coast Guard to conditioning departure clearance solely on the posting of a bond **or** other financial surety.[15]   The Coast Guard is not authorized to extract any other concessions for the release of the vessel and its crew.

61.    The House Committee on Merchant Marine and Fisheries, in discussing HR 6665 (the Bill subsequently enacted as the APPS), stated, "**to ensure payment of any fine or civil penalties that might be incurred upon completion of criminal proceedings or civil penalty actions**, the Secretary of the Treasury is required to refuse or revoke clearance to any ship upon the request of the Secretary of Transportation.

---

15  Where, as here, the statute does not define "surety," the term must be construed "in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).  According to the Concise Oxford Dictionary of Current English (9th ed. 1995), the definition of "surety" includes "money given as a guarantee that someone will do something"; *see also* BLACK'S LAW DICTIONARY 1483 (8th ed. 2004) (definition of "surety" includes "a formal assurance; esp., a pledge, bond, guarantee, or security given for the fulfillment of an undertaking").  Use of the term "bond or other surety" can also be found at 33 U.S.C. § 2072, Violation of Inland Navigational Rules; 33 U.S.C. § 1232, Enforcement Provisions; and in 33 U.S.C. § 891D(c), Contract Authority.  In each case, the term is used in reference as a means of guaranteeing payment.  There is no suggestion that the requirement of a bond is an opportunity for the government to obtain waivers of rights or the imposition of new obligations.

However, clearance may be granted upon the filing of a bond or other satisfactory surety." *See* House Report No. 96-1224, *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864 (Emphasis added). Therefore, the APPS allows for release of the vessel upon the posting of financial security, and nothing more.[16]

62.     The statute does not authorize the Defendants to expand the security provisions beyond the posting of a bond, such as to withhold departure clearance until the vessel's owner and operator waive Constitutional and statutory protections unrelated to assuring the payment of a fine or penalty, or as a pre-judgment penalty, or payment of the costs of the government's investigation and prosecution.

63.     There is no U.S. statute, regulation, or case law that permits the Defendants to demand a corporation to: (1) detain foreign citizens in the United States for an unlimited time, bearing all costs for their detention; (2) serve subpoenas on foreign citizens who are beyond the jurisdiction of the court and grand jury; and, (3) facilitate the introduction of evidence against the corporation at a future criminal trial, in return for releasing the corporation's property.

64.     Neither the APPS, nor any other statute, authorized the Defendants to demand the detention of foreign citizens who may be witnesses to an investigation, indefinitely, much less at the expense of a private corporation. The temporary detention

---

16 The Surety Bonds posted by the Plaintiffs contain provisions that require the individual Plaintiffs to appear both *in personam* and *in rem* for the vessel in all actions filed in U.S. District courts. These provisions ensure the U.S. District Courts can exercise jurisdiction over the Plaintiffs, and the respective vessels owned and operated by the Plaintiffs, to ensure the Plaintiffs answer any future criminal charges and pay any fines or civil penalties up to the amount of the bond that may be imposed. Accordingly, there is no security prejudice to the Defendants in conditioning the release of a vessel on the posting of a Surety Bond only.

of such witnesses is exclusively authorized by the material witness statutes codified at 18 U.S.C. § 3144.[17]

65.     Under the provisions of the material witness statute, 18 U.S.C. § 3144, it is the government's responsibility to pay the crewmembers' lodging, meals and incidental expenses, as well as witness fees pursuant to the provisions of 28 U.S.C. § 1821.

66.     Once detained as material witnesses pursuant to 18 U.S.C. § 3144, the crewmembers are entitled to demand their expedited release upon giving their depositions pursuant to FED. R. CRIM. P. 15, or other order of the Court supervising the material witness process.

67.     The Security Agreements demanded by the Coast Guard contain no provision for the expedited release of detained crewmembers and are therefore *per se* unreasonable and clearly impose an unjust hardship. *See Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000).[18]

---

17 "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure." 18 U.S.C. § 3144.

18 The U.S. District Court for the Southern District of Alabama recently found the Coast Guard's demand in the Security Agreements for the unlimited detention of crewmembers to be unreasonable. Specifically, Magistrate Judge William E. Cassady held, "based on what I've seen, there needs to be some legitimate and reasonable time period included in these [Security] Agreements with the owners and operators." *See* Exhibit "O" Transcript dated November 15, 2011. Relying on this provision of the Security Agreement, Magistrate Judge Cassady found that crewmembers detained pursuant to Security Agreements are *de facto* material witnesses who must be deposed and released within a reasonable time (i.e., within six weeks of their detention). This holding was in accordance with the decisions of three other U.S. District Courts which have held that crewmembers detained pursuant to Security Agreements are "functionally detained material witnesses," who are entitled to be promptly deposed pursuant to Fed. R. Crim. P. Rule 15 and then released. *See* Exhibit "U", Order, dated October 25, 2011, affirmed by District Court Judge Callie V.S. Grande on November 18, 2011 (granting Motion to Depose and Release Master of the M/V GAURAV PREM); *see also* Exhibit "V" Order, dated November 16, 2011 (granting Motion to Depose and Release Chief Engineer of the M/V GAURAV PREM)

68.     There is also no statutory or legal authority to demand that an owner and operator facilitate the service of Grand Jury and trial subpoenas on foreign citizens who reside outside the United States.  The service of these subpoenas is governed by the Federal Rules of Criminal Procedure and the applicable laws of the countries where the individual witnesses reside.

69.     The Defendants also require that, as part of the Security Agreements, the Plaintiffs stipulate to the authenticity of documents and items seized from the vessels by the Coast Guard.  There is clearly no provision of the APPS that permits the Defendants to require the Plaintiffs to waive legitimate defenses to the introduction of "evidence" in a future proceeding as a condition of having their vessel granted Customs clearance.

70.     There is no legal basis for the Coast Guard to require a putative defendant to pay the costs related to the investigation or prosecution of an alleged criminal act. *See United States v. Bevilacqua*, 447 F.3d 124, 127 (1st Cir. 2006). Even after a defendant is found guilty of violating U.S. law, the American legal tradition does not, absent specific statutory authority, require defendants to reimburse the government for the costs of their criminal investigations or their criminal prosecutions. *See id.* The terms and conditions sought by the Coast Guard in these security agreements do precisely that, in that they force an Owner and Operator, without due process, to incur costs, often in excess of $1 million, to keep and maintain the vessel crewmembers, as material witnesses, in the District for an indefinite time while the matter is investigated by the Department of Justice, which costs are rightly the obligation of the government under 18 U.S.C. §3144.

**G.     The Administrative Appeals Process is Futile**

71.     The procedure for appealing the Coast Guard's unauthorized security demands is governed by 46 C.F.R. § 1.03 and 33 C.F.R. § 160.7.

72.     The regulations provide a four-step appellate process, each step of which is, perversely, ultimately controlled by Coast Guard Headquarters, which is the same office that determines the precise terms of every Security Agreement.

73.     The first step is the Request for Reconsideration, at the Sector level. *See* 46 C.F.R. § 1.03-20 and 33 C.F.R. § 160.7(a).

74.     Upon denial of the Request for Reconsideration, the next step is to appeal to the District Commander. *See* 33 C.F.R. § 160.7(b).

75.     Upon denial of the appeal by the District Commander, the next step is to appeal to the Area Commander. *See* 33 C.F.R. § 160.7(c).

76.     Upon denial of the appeal by the Area Commander, the matter must be appealed to the U.S. Coast Guard Assistant Commandant for Prevention (formerly known as the Assistant Commandant for Marine Safety, Security and Environmental Protection), in Washington, D.C.  *See* 33 C.F.R. § 160.7(d).   This is the same office that sets the policy and procedures for the Security Agreements and forbids any changes or negotiation to the major terms of the demanded Security Agreements.

77.     The administrative appeals process holds only two certainties: delay and that all appeals will be denied, as they have been heretofore.

78.     The Request for Reconsideration of the M/V AGIOS EMILIANOS Security Agreement was filed with Sector New Orleans on May 23, 2011,[19] and denied 67 days later on July 29, 2011.[20]

79.     Plaintiffs Watervale and Ilios appealed the denial of the Request for Reconsideration to the U.S. Coast Guard Eighth District Commander on September 12, 2011.[21]

80.     The U.S. Coast Guard Eighth District Commander denied the appeal 71 days later, on November 22, 2011.[22]

81.     Plaintiffs Watervale and Ilios appealed to the U.S. Coast Guard Area Commander on January 4, 2012, which remains pending.[23]

82.     There remains still another level of appellate review thereafter for the M/V AGIOS EMILIANOS, to the U.S. Coast Guard Assistant Commandant for Prevention (formerly known as the Assistant Commandant for Marine Safety, Security and Environmental Protection), in Washington, D.C.

83.     The Request for Reconsideration of the M/V STELLAR WIND Security Agreement was filed with Sector New Orleans on October 6, 2011,[24] and denied 57 days later on December 2, 2011.[25]

---

19 A copy of the M/V AGIOS EMILIANOS Request for Reconsideration is attached hereto as Exhibit "B".
20 A copy of the denial letter for the M/V AGIOS EMILIANOS Request for Reconsideration is attached hereto as "C".
21 A copy of the M/V AGIOS EMILIANOS appeal to the U.S. Coast Guard Eight District Commander is attached hereto as "D".
22 A copy of the U.S. Coast Guard Eighth District Commander's denial of the M/V AGIOS EMILIANOS appeal is attached hereto as "E".
23 A copy of the M/V AGIOS EMILIANOS appeal to the U.S. Coast Guard Area Commander is attached hereto as "F".
24 A copy of the M/V STELLAR WIND Request for Reconsideration is attached hereto as Exhibit "H".
25 A copy of the denial letter for the M/V STELLAR WIND Request for Reconsideration is attached hereto as "I".

84.     Plaintiffs Achillea and Cleopatra appealed the denial of the Request for Reconsideration to the U.S. Coast Guard Eighth District Commander on December 29, 2011, which remains pending. [26]

85.     There remains two additional levels of appellate review thereafter for the M/V STELLAR WIND, to the U.S. Coast Guard Area Commander, and then to the U.S. Coast Guard Assistant Commandant for Prevention (formerly known as the Assistant Commandant for Marine Safety, Security and Environmental Protection), in Washington, D.C.

86.     The Request for Reconsideration of the M/V GAURAV PREM Security Agreement was filed with Sector Mobile on October 14, 2011,[27] and denied 18 days later on November 1, 2011.[28]

87.     Plaintiffs Mercator and Target appealed the denial of the Request for Reconsideration to the U.S. Coast Guard Eighth District Commander on January 4, 2012, which remains pending. [29]

88.     There remains two additional levels of appellate review thereafter for the M/V GAURAV PREM, to the U.S. Coast Guard Area Commander, and then to the U.S. Coast Guard Assistant Commandant for Prevention (formerly known as the Assistant Commandant for Marine Safety, Security and Environmental Protection), in Washington, D.C.

---

[26] A copy of the M/V STELLAR WIND appeal to the U.S. Coast Guard Eighth District Commander is attached hereto as "J".
[27] A copy of the M/V GAURAV PREM Request for Reconsideration is attached hereto as Exhibit "L".
[28] A copy of the denial letter for the M/V GAURAV PREM Request for Reconsideration is attached hereto as "M".
[29] A copy of the M/V GAURAV PREM appeal to the U.S. Coast Guard Eighth District Commander is attached hereto as "N".

89. The Request for Reconsideration of the M/V POLYNEOS Security Agreement was filed with Sector New Orleans on November 22, 2011,[30] and denied 10 days later on December 2, 2011.[31]

90. Plaintiffs Bulkers and Odysea appealed the denial of the Request for Reconsideration to the U.S. Coast Guard Eighth District Commander on December 29, 2011, which remains pending.[32]

91. There remains two additional levels of appellate review thereafter for the M/V POLYNEOS, to the U.S. Coast Guard Area Commander, and then to the U.S. Coast Guard Assistant Commandant for Prevention (formerly known as the Assistant Commandant for Marine Safety, Security and Environmental Protection), in Washington, D.C.

92. The remaining levels of appeal in all four cases will each take as much, if not more, time to adjudicate, even as the outcome at each level is assured given the fact that these security agreements are handled on an institutional basis and as a matter of Coast Guard policy, implemented and controlled by Coast Guard Headquarters, which cannot be varied or changed by the local Coast Guard Sector, District or Area Commands.

93. The Plaintiffs' Requests for Reconsideration of the terms of the Security Agreements, filed respectively in Sector New Orleans,[33] and Sector Mobile,[34] and their

---

30 A copy of the M/V POLYNEOS Request for Reconsideration is attached hereto as Exhibit "Q".
31 A copy of the denial letter for the M/V POLYNEOS Request for Reconsideration is attached hereto as "R".
32 A copy of the M/V POLYNEOS appeal to the U.S. Coast Guard Eighth District Commander is attached hereto as "S".
33 The Request for Reconsideration of the Security Agreements for the release of the M/V AGIOS EMILIANOS, M/V STELLAR WIND, and M/V POLYNEOS were filed with Sector New Orleans. *See* Exhibits "B", "H", and "Q".

respective appeals of the denials thereof,[35] recited exhaustive research into the legislative history of the APPS, and cases concerning the Constitutional rights of the vessel owners and operators, which establish that the Coast Guard is not authorized pursuant to the APPS, or any other statute, to demand anything more than a bond or other financial surety in exchange for the release of the vessels.

94.     In response, after prolonged and costly[36] delays, the Coast Guard has heretofore uniformly and summarily denied all of the Plaintiffs' individual Requests for Reconsiderations and Appeals.

95.     The Coast Guard's summary denials of all of the Plaintiffs appeals were a foregone conclusion as the terms and conditions of the Security Agreements are mandated and controlled by Coast Guard Headquarters. Accordingly, no Sector, District or Area Commander is authorized to grant the appeal or even entertain a request for relief from these conditions.

96.     The Coast Guard administrative appeals process is an exercise in futility. *See Arkla Exploration Company v. Texas Oil & Gas Corp. et al*, 734 F.2d 347, 355 (8th Cir. 1984) (holding that if, "the agency's hostile attitude makes it impossible or highly improbable that the litigant will obtain the relief [it] seeks, exhaustion [of the administrative appeals process] will not be required. The doctrine of exhaustion of administrative remedies is not a strict jurisdictional requirement, but rather a flexible concept which must be tailored to the circumstances of the particular case").

---

34 The Request for Reconsideration of the Security Agreement for the release of the M/V GAURAV PREM was filed with Sector Mobile. *See* Exhibit "L".
35 *See* Exhibits "C", "E", "I", "M", and "R".
36 The Plaintiffs continue to incur costs of maintaining and paying full salaries, lodging, and per diem funds, to all detained crewmembers as the administrative appeals drags on.

97.     The futility of the Coast Guard's administrative appeals process is a clear deprivation of the Plaintiffs' due process right to a timely, impartial and fair adjudication of the Defendants' failure to abide by the clear terms of 33 U.S.C. § 1908(e). *See West v. Bergland*, 611 F.2d 710, 719 (8th 1979) (stating that exhaustion of an administrative appeal would be futile when the issue being challenged is the agency's own long standing interpretation of a statute).

98.     Exhaustion of the administrative appeals process is also not required as the Security Agreements demanded by the Coast Guard require the indefinite detention of crewmembers, which is both unreasonable and an undue hardship for both the crewmembers and the vessel Owner and Operator. *See Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000) (holding that when an agency's actions will cause hardship, a Petitioner is not required to exhaust the administrative appeals process).

99.     As a result of the futility of the appeals process, the Plaintiffs sent a letter to the Commandant of the Coast Guard, dated November 23, 2011, which set forth the aforementioned factual and procedural history of all of the pending appeals, the fact that it was clear from the summary and uniform denials of the appeals at every appellate level that no Sector, District or Area Commander had the authority to revise or amend the terms of the individual Security Agreements, and accordingly requested the Commandant's Office  to issue its "final agency action" on all pending appeals for the four Security Agreements in question.[37]

100.    The Plaintiffs requested the Coast Guard Commandant's Office to respond with its final agency action within ten (10) business days of the receipt of the letter. To

---

37 A copy of the Plaintiffs' Letter seeking final agency action is attached hereto as Exhibit "T".

date, the Coast Guard has not responded to the letter. The Coast Guard's failure to respond to the letter in any manner is a *de facto* "final agency action" which gives the Court a separate and distinct basis to accept jurisdiction in this matter.

## H.   The Plaintiffs Are Entitled to Relief Under the Administrative Procedures Act

101.   The U.S. District Courts have jurisdiction to hear challenges to the Coast Guard's authority to demand the terms set forth in the Security Agreements under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. (hereinafter, the "APA").

102.   The APA empowers the Court to "hold unlawful and set aside" any agency action, such as the Coast Guard's action with respect to the aforementioned Security Agreements, which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," under 5 U.S.C. § 706(2)(A); "contrary to constitutional right, power, privilege, or immunity," under 5 U.S.C. § 706(2)(B); or, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," under 5 U.S.C. § 706(2)(C).[38]

103.   The administrative appeals process is deemed "exhausted" when a "final agency action" is taken. *See Darby*, 509 U.S. at 146.

---

38 "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;(B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706 Scope of Review.

104.    A District Court may grant relief <u>before</u> final agency action is taken if the Plaintiffs can, as here, demonstrate the "futility" of the appeals process within the agency and/or hardship resulting from a delayed adjudication. *See Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000) (holding the "Doctrines of 'ripeness' and 'exhaustion' contain exceptions, which exceptions permit early review when the legal question is 'fit' for resolution and delay means hardship or when exhaustion would prove 'futile.'"); *see also Arkla Exploration*, 734 F.2d at 355 ("If the agency's limited power to grant relief or the agency's hostile attitude makes it impossible or highly improbable that the litigant will obtain the relief [it] seeks, exhaustion [of the administrative appeals process] will not be required. The doctrine of exhaustion of administrative remedies is not a strict jurisdictional requirement, but rather, a flexible concept which must be tailored to the circumstances of the particular case").

105.    The Plaintiffs' further appeals in this matter through the Coast Guard administrative appeals process are futile, as the terms and conditions of the Security Agreement are determined, overseen and controlled on an institutional and policy basis at the highest level of the Coast Guard, including the Office of the Commandant, which is the final level of appeal in the Coast Guard's administrative appeals process.

106.    This matter is ripe for judicial review pursuant to the APA.

## COUNT I

**The Coast Guard Lacks of Statutory Authority to Demand the Terms Extracted from the Plaintiffs in the Security Agreement**

107.    Plaintiffs reallege paragraphs 1 through 106 of this Complaint.

108.    In demanding the terms in the Security Agreements, the Defendants purport to rely on the APPS, specifically 33 U.S.C. § 1908(e).

27

109.     33 U.S.C. § 1908(e) does not authorize the Coast Guard to demand anything more than the posting of a bond **or** other financial surety in order to grant a vessel Customs clearance to depart the United States.

110.     33 U.S.C. § 1908(e) neither requires nor authorizes the Defendants to condition release of the vessel upon the Plaintiffs agreeing to forfeit constitutionally protected  rights, or assume any other financial obligations other than the obligation to post a bond or other monetary security to assure payment of any potential fine or penalty.

111.     There is no statutory basis or legal authority for the Defendants to demand Plaintiffs waive constitutionally protected rights, pay for the cost of detaining, housing, transporting, etc., witnesses, material or otherwise, for an unlimited time, and to agree to other fundamentally unfair and objectionable terms as a condition of releasing a vessel under 33 U.S.C. § 1908(e).

112.     There is no legal basis for the terms and conditions of Security Agreements that are demanded by the Defendants and the use of economic coercion to force the Plaintiffs to accept these terms and conditions is: (A) "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." [39]

113.     The Defendants have no legal right or authority to require the Plaintiffs to bear the costs of their own prosecution, or to impose any pre-judgment penalty as a condition for obtaining the release of their property. As such, the Defendants are acting: (B) "contrary to [their] constitutional right, power, privilege, or immunity;" [40]

114.     As the APPS does not permit Customs clearance to be conditioned on anything more than the posting of a bond or other financial surety, the demand that the

---

39 *See* 5 U.S.C. § 706.
40 *See id.*

Plaintiffs execute Security Agreements is: (C) "in excess of [the Coast Guard's] statutory jurisdiction, authority, or limitations, or short of statutory right;"[41]

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray this Court:

    a.    Vacate the Security Agreements forced upon the Plaintiffs by the Defendants as an arbitrary and capricious abuse of power, unauthorized by the APPS or any other statute or regulation on which the Coast Guard would purportedly rely;

    b.    Enjoin the Coast Guard from demanding anything more than a surety bond or other financial surety for the granting of a departure clearance for any vessel that is the subject of APPS, CWA and/or PWSA related investigations;

    c.    Award the costs and attorneys' fees of this application to the Plaintiffs, and,

    d.    Award such other relief as this Honorable Court deems appropriate.

---

41 *See id.*

Respectfully submitted,

January 23, 2012

BRUCE PASFIELD (DC # 495239)
Alston & Bird LLP
The Atlantic Building
950 F Street NW
Washington, DC 20004-1404
(202) 239-3585

*Of counsel:*

MICHAEL G. CHALOS
BRIAN T. MCCARTHY
Chalos O'Connor, LLP
366 Main Street
Port Washington, NY 11050
(516) 767-3600

Attorneys for Plaintiffs